ALBERT V. QUINN, Plaintiff, *v.* UNION RAILWAY COMPANY OF
NEW YORK CITY, Defendant.

City Court of New York, Bronx County, May 21, 1929.

*A. E. Latto,* for the plaintiff.

*John J. O'Connell,* for the defendant.

DONNELLY, J. This action is to recover for personal injuries
and for property damage sustained in a collision between plaintiff's
automobile and a car owned and operated by the defendant. The
jury found for the plaintiff in the sum of $1,180. Decision was
reserved on the motions made by the defendant (1) to dismiss
the complaint on the merits at the close of plaintiff's case; (2) to
dismiss the complaint at the end of the entire case; (3) for the
direction of a verdict at the end of the entire case; (4) to set aside
the verdict.

Plaintiff's version of the accident was as follows: About four-
thirty in the afternoon of Sunday, July 17, 1927, which was a bright
clear day, he parked his car at the curb on the west side of Third
avenue, in the center of the block between One Hundred and Fifty-
third and One Hundred and Fifty-fourth streets, to pump up a
flat tire. After doing so, and seeing nothing when he looked in
the mirror in front of him and through the rear window of his car,
he reversed the car fifteen or twenty feet and stopped. As he was

getting ready to turn out on the track, he leaned out of the window of his car, and, although his vision to the north was unobstructed for about one hundred and fifty to two hundred feet, he saw no approaching taxi or trolley car. He put his left hand out the window, and with his right hand started forward in low speed, going south fifteen feet, and was practically on the track about to shift from first to second when his automobile was struck, not directly on the back but on the rear left side, by the defendant's trolley car. Immediately after the collision, his car was facing in a southeasterly direction. He looked back twice, the first time when he started to reverse, and again when he started to go forward. He did not look back again, because, when he got to the track, it was necessary to direct his attention ahead.

Plaintiff called three witnesses. Beirwalter was standing on the west side of Third avenue between One Hundred and Fifty-third and One Hundred and Fifty-fourth streets. His attention was first directed to the plaintiff when he pulled his car out from the curb. At that time Beirwalter saw the trolley car leaving One Hundred and Fifty-sixth street and Third avenue, and had no difficulty in seeing up Third avenue that distance. It is a straight track all along there. Hanson, who was walking south on the west side of Third avenue from One Hundred and Fifty-fourth to One Hundred and Fifty-third street, saw plaintiff pulling out his car and start to go south on Third avenue. At that time Hanson did not see any trolley car. He was not asked whether or not he looked to see if a car was approaching. The next thing he knew there was a crash. Augustus Quinn, a total stranger to the plaintiff before the accident, who was a passenger on the street car in question, was seated three feet from the front of the car on its right-hand side, looking directly ahead from the time the car left One Hundred and Fifty-sixth street. When the trolley car was at One Hundred and Fifty-fourth street he saw plaintiff's car going upon the track.

The defendant produced the motorman and two other witnesses, whose testimony, in substance, was that the trolley car was ten or fifteen feet away when plaintiff's automobile came out on the car tracks.

There was no testimony by plaintiff or his witnesses as to the distance the trolley car was away from plaintiff's automobile when plaintiff reached the tracks. The only testimony as to where the trolley car was when plaintiff turned on to the tracks is that it was ten to fifteen feet away. Plaintiff had not completed his turn and straightened out on the tracks before he was struck. When he had traveled fifteen feet in a southerly direction and started to

turn towards the tracks, his car was ten to fifteen feet from the nearest rail. Had he looked before he turned on the tracks, he would have seen the trolley car and he would have been in a position to stop his car and avoid the accident. His testimony is, that if he were standing on the south-bound track where the accident happened he could see north about a block.

On this evidence, the plaintiff was guilty of contributory negligence. His testimony that he did not see the approaching car although he had a clear and unobstructed view for 100 to 150 feet, is incredible as a matter of law. (*Unger* v. *Belt Line Ry. Corp.*, 234 N. Y. 86, 90; *Weigand* v. *United Traction Co.*, 221 id. 39, 42; *Goldstein* v. *Union Ry. Co.*, 180 App. Div. 417; affd., 230 N. Y. 570; *Dolfini* v. *Erie R. R. Co.*, 178 id. 1, 4; *Baxter* v. *Auburn & Syracuse El. R. R. Co.*, 190 id. 439.)

In *Unger* v. *Belt Line Ry. Corp.* (*supra*) the court (at p. 90) said: " Failure to see a car approaching in unobstructed view is incredible as a matter of law." In *Weigand* v. *United Traction Co.* (*supra*) the court (at p. 42) said: " We have, therefore, the not unusual situation of a plaintiff testifying that when about to cross a railroad she looked in the direction of an approaching car in full view and did not see it. She was bound to see it. She was bound to see what by the proper use of her senses she might have seen. The statement that a witness does not see what she should have seen is incredible as a matter of law." In *Dolfini* v. *Erie R. R. Co.* (*supra*) the court (at p. 4) said: " If the plaintiff looked at the point stated in his testimony the train, at the time, must have been two or three hundred feet west of the curve and in plain sight. It is not sufficient that the plaintiff testifies that he looked but did not see. Such a statement is incredible as a matter of law (*Matter of Harriot*, 145 N. Y. 540)."

Plaintiff testified that the point at which he started to pull out from the curb was on the west side of Third avenue, *in the center of the block between One Hundred and Fifty-third and One Hundred and Fifty-fourth streets*. Beirwalter testified that the point at which he was standing on the west side of Third avenue between One Hundred and Fifty-third and One Hundred and Fifty-fourth streets, was about one hundred feet from the intersection of One Hundred and Fifty-third street, and about ten or fifteen feet south of the scene of the accident. He also testified: " I was standing in between the block, opposite where the car stops; the car stops at the north crossing of 153d Street; * * * that is where it always stops."

Taking judicial notice of the layout of the streets at and near the scene of the accident, one standing at the place where Beirwalter says he was, would be on the west side of Third avenue some dis-

tance north of the northwest corner of Third and Elton avenues. At that point, Elton avenue starts at Third avenue and runs somewhat obliquely in a northwesterly direction. One Hundred and Fifty-third street on the west, runs into Elton avenue. Directly opposite where Beirwalter stood is the northeast corner of Third avenue and East One Hundred and Fifty-third street. The only inference that can be drawn from Beirwalter's testimony is, that the point at which he was standing is the place where south-bound Third avenue trolley cars stop to discharge and take on passengers. One located where the plaintiff was and who attempted to cross Third avenue at that point would not, in any event, do so at the crosswalk. In these circumstances, plaintiff was guilty of contributory negligence. In *Unger* v. *Belt Line Ry. Corp.* (*supra*) the court (at p. 89) said: " The point at which they [the deceased and her sister] left the curbstone or the sidewalk is given as either seventy-five or one hundred and forty feet east of Third avenue. The exact distance is immaterial, the fact being that these two persons attempted to cross the street between intersecting streets and not at a street crossing. Between the blocks the railroad company had the paramount right of way." In *Baxter* v. *Auburn & Syracuse El. R. R. Co.* (*supra*, at p. 443) the court said: " A street surface railway track may not be as much a place of danger, as is a steam railway track; but, nevertheless, its presence in the street admonishes a person to be reasonably vigilant when attempting to cross. It behooves the deceased, before going upon it, to use his senses and to look and to listen. He was to decide if it was reasonably prudent at the moment to cross it. The omission to look would only be excusable in a situation, where that precaution was shown by the circumstances to have been an unavailing one. However excessive the speed of the car, it is plain that, had the deceased looked again, after leaving the sidewalk, he would have seen it and might have awaited its passage. It was culpable negligence, as matter of law, in my opinion, for him to drive across the car track, between street crossings as he was, without looking to see if a car was approaching, at a point where it could have been seen for several hundred feet. That was the evidence and I think it showed an inexcusable neglect on the part of the deceased, which contributed directly to his injury, as a proximate cause thereof." In *Goldstein* v. *Union Ry. Co.* (*supra*) the court (at pp. 418, 419) said: " Harry Goldstein, the intestate, * * * was crossing Third avenue between St. Paul's Place and One Hundred and Seventieth street * * * in the middle of the block. * * * The physical facts are such that if the decedent had looked he would have seen this car approaching, as it was very near to him,

192

and if he had seen the car approaching he had no right to experiment to see whether he could get over before the car reached him, that is, when the car was approaching so near that in his ordinary walk across the street he would be struck. There is some testimony that he looked up and down the track before he crossed. If this be true, then he saw the car approaching, and was guilty of negligence in attempting to cross when the car was so close upon him. The fact that he was struck demonstrates that the car was not far away when he crossed."

Motions to set aside the verdict and to dismiss the complaint granted. Exception to plaintiff. Ten days' stay of execution and thirty days to make and serve case allowed.